IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

CHRISTOPHER J. COVEY
and LELA G. COVEY,

        Plaintiffs,

v.                                       Civil Action No. 5:11cv147

ASSESSOR OF OHIO COUNTY, et al.,

        Defendants.

## REPORT AND RECOMMENDATION

### I. INTRODUCTION

On October 20, 2011, the *pro se* Plaintiffs filed a complaint against the above-named Defendants pursuant to 42 U.S.C. § 1983, and *Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics*, 403 U.S. 388 (1971), alleging various civil rights violations. Plaintiffs also allege in their complaint several other state law causes of action. After conducting a preliminary review, on October 25, 2011, the undersigned instructed the Clerk to issue 21 day summonses for the named defendants and instructed Plaintiffs to effect service of process upon those parties by February 17, 2012. On February 21, 2012, those summonses were returned executed as to the Department of Justice, Robert L. Manchas, the Ohio Valley Drug Task Force, the Ohio County Animal Shelter, the two unknown dog wardens, Doug McCrosky, Nichole Seifert, Nelson Croft, the Ohio County Sheriff, Patrick Butler, Ron White, and Alex Espejo. Summonses were returned unexecuted as to the Assessor of Ohio County, Roy Crews, an unknown assessor, and Kathie Hoffman on February 21, 2012, for refusal to accept service. On March 30, 2012, all named Defendants, except for the Ohio Valley Drug Task Force, filed a Motion to Dismiss. On April

1

10, 2012, the Ohio Valley Drug Task Force filed a separate Motion to Dismiss. On April 11, 2012, and May 9, 2012, Plaintiffs filed responses to the motions.

## II. THE PLEADINGS

### A. The Complaint

In their complaint, Plaintiffs allege that on October 21, 2009, Roy Crews, an employee of the Ohio County Assessor's office entered Plaintiffs' property for property tax purposes despite posted no trespassing signs. Upon entry onto the property, Roy Crews saw marijuana plants growing in plain view on the outdoor back patio of Plaintiffs' home, and, after seeing the drugs, contacted Patrick Butler with the Ohio County Sheriff's Department to give him the information. Based on the call, the Ohio County Sheriff's Department sent officers Alex Espejo and Robert Manchas to Plaintiff's home. After witnessing the marijuana plants, and obtaining an admission by one of the plaintiffs about drug paraphernalia inside the home, Officer Espejo left to obtain a search warrant to conduct a search of the home, leaving Deputy Ron White on the scene.

In the meantime, Mrs. Covey returned home and was placed in handcuffs by one of the officers. Officer Espejo returned with a search warrant and the officers conducted a search of the home. Plaintiffs Christopher Covey and Lela Covey were arrested, placed in squad cars, and taken to jail to be booked. Later that evening the Plaintiffs' son returned home and noticed officer Espejo was still at the home searching Mrs. Covey's computer. Also while the Plaintiffs' son was present, two unnamed officers of the Ohio County Dog Warden entered the residence and seized the family's raccoon.

### B. Defendants' Motions

Defendants the Assessor of Ohio County, Patrick Butler, Roy Crews, Nelson Croft, DLG, Alex Espejo, HNK, Kathie Hoffman, Doug McCrosky, Ohio County Animal Shelter, Ohio

County Sheriff, Ohio Valley Drug Task Force, Nichole Seifert, Unknown Assessor, Unknown Dog Wardens, and Ron White, in support of their Motion to Dismiss, argue that:

1. The individual officers named are immune from the state law claims under the West Virginia Government Tort Claims and Insurance Reform Act.

2. Plaintiffs' are not entitled to recovery under a theory of *respondeat superior* for claims arising under 42 U.S.C. §1983.

3. Plaintiffs' false imprisonment claim cannot stand because the individuals named were acting within in the scope of their employment thereby giving them immunity.

4. Plaintiffs' complaint should be dismissed in its entirety as a matter of law pursuant to West Virginia Code §29-12A-6(d) because it improperly specified in the demand a monetary amount for damages.

5. Plaintiffs' claims for punitive damages should be dismissed as a matter of law pursuant to West Virginia Code §29-12A-7(a) because in any civil action involving employees of a political subdivision as a party defendant, an award of punitive damages is prohibited.

6. Plaintiffs' complaint should be dismissed as a matter of law for failure to serve Defendants within the time limits prescribed by Federal Rule of Civil Procedure 4(m).

Defendant Ohio Valley Task Force, in support of its separate Motion to Dismiss, argues that:

1. No individually named defendants were employed by the Task Force, and even if so, Plaintiffs' are not entitled to recovery under a theory of *respondeat superior* for claims arising under 42 U.S.C. §1983.

2. Plaintiffs' false imprisonment claim cannot stand because the individuals named were acting within in the scope of their employment thereby giving them immunity.

3. Plaintiffs' complaint should be dismissed in its entirety as a matter of law pursuant to West Virginia Code §29-12A-6(d) because it improperly specified in the demand a monetary amount for damages.

4. Plaintiffs' claims for punitive damages should be dismissed as a matter of law pursuant to West Virginia Code §29-12A-7(a) because in any civil action involving employees of a political subdivision as a party defendant, an award of punitive damages is prohibited.

5. Plaintiffs' complaint should be dismissed as a matter of law for failure to serve Defendants within the time limits prescribed by Federal Rule of Civil Procedure 4(m).

**C. Plaintiffs' Replies**

In Plaintiffs' Memorandum in Support of Opposition to Dismiss Plaintiffs' Complaint, Plaintiffs argue that:

1. Although all Defendants were employees of political subdivisions, all were acting outside the scope of their employment and official duties at the time of the events alleged to have occurred in the complaint.

2. West Virginia's Assessor's Manual, Title 189, Procedural Rules 189-2-3 on Standard Visitation Procedures provides that if property is posted with no trespassing signs, the data collector is not to enter the grounds and is instead to complete the property record card by estimating the required information, and that failure to follow these procedural rules indicates negligent supervision, failure to train, and failure to direct.

3. Plaintiffs only attached a monetary amount to the compensatory damages claim and not to the punitive damages claim, but even if the Court finds to the contrary, this is only a technical defect that would not warrant dismissal.

4. 42 U.S.C. § 1983 is the controlling statute, not the West Virginia Government Tort Claims and Insurance Reform Act.

In Plaintiff's Memorandum in Support of Opposition to Dismiss Defendant Ohio Valley Drug Task Force, Plaintiffs argue that:

1. The Assessor performed an illegal search when he entered onto Plaintiffs' private property.

2. The Ohio Valley Drug Task force oversees the Wheeling Police Department, the DEA and the Ohio County Sheriff's Office, making them in charge of the Defendant agencies named in the complaint.

3. There is no requirement that a civil complaint provide evidence of customs or official policies under current pleading standards.

4. The monetary damages demanded were related to compensatory not punitive damages.

5. Pro Se plaintiffs should be granted leniency for procedural defaults like failure of service of process.

### III. STANDARD OF REVIEW

In ruling on a motion to dismiss the Court must accept as true all well-pleaded factual allegations. *Walker v. True*, 399 F.3d 315 (4th Cir. 2005). Furthermore, dismissal for failure to state a claim is properly granted where, assuming the facts alleged in the complaint to be true, and construing the allegations in the light most favorable to the plaintiff, it is clear, as a matter of law, that no relief could be granted under any set of facts that could be proved consistent with the allegations of the complaint. *Hishon v. King & Spaulding*, 467 U.S. 69, 73 (1984); *Conley v. Gibson*, 355 U.S. 41, 4506 (1957).

### IV. ANALYSIS

**A. Count Three**

Count Three of Plaintiffs' complaint alleges a cause of action pursuant to 42 U.S.C. § 1983 against the Ohio County Sheriff's Department and its officers, the Assessor of Ohio County and its Officers, and the Ohio County Animal Shelter and its Officers. Plaintiffs allege that the named defendants acted with deliberate indifference to their civil rights in committing an unreasonable search and seizure.

As a preface, state officials sued in their official capacities do not constitute "persons" within the language of 42 U.S.C. § 1983. Official capacity claims "generally represent only another way of pleading an action against an entity of which an officer is an agent." *Kentucky v. Graham*, 473 U.S. 159, 165 (1985) (citation and quotations omitted). Therefore, suits against state officials in their official capacities should be treated as suits against the state. *Id.* at 166.

In order for the governmental entity to be a proper party of interest, the entity's policy or custom must have played a part in the violation. *Id.* (citing *Monell v. New York City Dept. of Soc. Servs.*, 436 U.S. 658, 694 (1978)). Thus, it is possible that a governmental entity could be liable if it had a policy or custom of failing to train its employees, and that failure amounted to "deliberate indifference" causing the constitutional violation. *See City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989). However, in this case, Plaintiffs fail to assert that a policy or custom played a part in the alleged violation of their constitutional rights. In fact, Plaintiffs fail to mention any policy at the Ohio County Sheriff's Department, the Ohio County Animal Shelter, or the Ohio County Assessor's office relating to this incident. Accordingly, claims against these Defendants should be dismissed.

Plaintiffs do state in their complaint, however, that "these Defendants are being sued in their *individual and personal* capacities." State officials are considered "persons" within the meaning of § 1983 when sued in their individual capacities, and as such may be held personally liable for damages. *See Hafer v. Melo*, 502 U.S. 21, 31 (1991). These claims do not require proof of any policy or custom of the entity that violated Plaintiffs' rights, and qualified immunity may be raised as a defense. Plaintiffs allege that the tax assessor and sheriff's office conducted unlawful searches of their home under the Fourth Amendment, and a brief discussion of Fourth Amendment law shows why these claims must be dismissed.

A Fourth Amendment search only occurs where a reasonable expectation of privacy exists under the two-part test delineated in *Katz* where (1) the individuals have shown a subjective expectation of privacy in the object of the challenged search, and (2) society is willing to accept this expectation as reasonable. *Katz v. United States*, 389 U.S. 347 (1967). The first person to witness the marijuana growing at the Covey's home was the state tax assessor. The

Sixth Circuit addressed a citizen's reasonable expectation of privacy when a municipal tax assessor enters the curtilage of the home, holding that "a property assessor does not conduct a Fourth Amendment search by entering the curtilage for the tax purpose of naked-eye observations of the house's plainly visible exterior attributes and dimension." *Wildgren v. Maple Grove Twp.*, 429 F.3d 575 (6th Cir. 2005). The same holds true here where nothing unduly intrusive occurred: the assessor used ordinary methods to observe the house; there is no evidence he craned his neck or was straining to observe anything; and although Plaintiffs allege that he did open the door, it was only to drop a pamphlet inside and the marijuana he observed was in the backyard, not inside. Accordingly, Plaintiffs had no objectively reasonable expectation of privacy, and no search occurred.

After the Assessor viewed marijuana growing in Plaintiffs' backyard, he made a call to the Sheriff about what he had seen on the property, and officers were sent to the property, presumably to conduct a "knock and talk." The Fourth Circuit has held that "[t]he Fourth Amendment does not prohibit police, attempting to speak with a homeowner, from entering the backyard when circumstances indicate they might find him there." *Alvarez v. Montgomery Cnty*, 147 F.3d 354, 356 (4th Cir. 1998). "[T]his circuit has permitted law enforcement officers to enter a person's backyard without a warrant when they have a legitimate law enforcement purpose for doing so." *Id*. at 358. *United States v. Bradshaw*, 490 F.2d 1097, 1100 (4th Cir. 1974).

In this case, according to the complaint, Mr. Covey was outside working at his workbench in the walk-out basement patio area when officers arrived. Based on these facts, the officers were justified in approaching Mr. Covey in the backyard since it was clear he was not in the house. It was then that the officers noticed the marijuana plants in plain view on Plaintiffs'

7

back patio. The officers then had probable cause to arrest Mr. Covey, and had probable cause to seek a search warrant for the premises.

In sum, there were no constitutional violations associated with the tax assessor approaching the Covey's home or providing a tip to the sheriff's office about what he saw. Similarly, there were no constitutional violations on the part of the sheriff's office by acting on the tip to approach the Covey's home. Once there, and without searching the residence, the officers saw in plain view the marijuana in the backyard, leading to probable cause for a search warrant and the arrest of the Coveys. Accordingly, the claims against the assessor's and sheriff's offices must be dismissed.

As to the actions of the dog wardens in seizing the raccoon, it is unquestionable that there was a meaningful interference with Plaintiffs' possessory interests in their pet raccoon. *See Van Patten v. City of Binghamton*, 137 F. Supp. 2d 98, 107 (N.D.N.Y. 2001). But, a seizure alone does not constitute a Fourth Amendment Violation; only seizures that are unreasonable under the circumstances will violate the Fourth Amendment. *Soldal v. Cook County, Illinois*, 506 U.S. 56 (1992). When the state makes a warrantless seizure, courts must "balance the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion." *United States v. Place*, 462 U.S. 696, 703 (1983).

In this case, the state's interest in promoting the public health and welfare was implicated when it was discovered that Plaintiffs were keeping an undomesticated animal in their home. *See Brown v. Muhlenberg Twp.*, 269 F.3d 205, 210-11 (3rd Cir. 2011). In addition to the public health concerns related to diseases that are raised by the keeping of wild animals, the two who were presumably charged with its care had just been taken into custody, thereby leaving the

animal in an abandoned state. Under this set of circumstances, the Court finds that the dog wardens' seizure of the raccoon cannot be taken as an unreasonable seizure within the meaning of the Fourth Amendment. Since no constitutional violations have occurred, a cause of action under § 1983 cannot stand, and the motion to dismiss must be granted with respect to these Defendants.

Next, as to Defendant Doug McCrosky, supervisor of the Ohio County Animal Shelter, Sheriff Patrick Butler, Kathie Hoffman, Head Assessor, Roy Crews, Field Deputy, and the Assessor of Ohio County, they all appear to have been named in this suit merely because of their position as supervisors. There is no *respondeat superior* liability under § 1983. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978); *Vinnedge v. Gibbs*, 550 F. 2d 926, 928 (4th Cir. 1997). Instead, "liability will lie where it is affirmatively shown that the official charged acted personally in the deprivation of the plaintiff's rights." *Vinnedge*, 550 F.2d at 928. When a supervisor is not personally involved in the alleged wrongdoing, he may be liable under §1983 if a subordinate acts pursuant to an official policy or custom for which he is responsible. *Fisher v. Washington Metro. Area Transit Auth.*, 690 F. 2d 1113 (4th Cir. 1982). Similarly, a supervisor may be liable under § 1983 if the following elements are established: "(1) the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a 'pervasive and unreasonable risk' of constitutional injury to citizens like the plaintiff; (2) the supervisor's response to that knowledge was so inadequate as to show 'deliberate indifference to or tacit authorization of the alleged offensive practices,' and (3) there was an 'affirmative causal

link' between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff." *Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir.), *cert. denied*, 513 U.S. 813 (1994).[1]

In this case, as detailed in the preceding analysis, Plaintiffs have suffered no constitutional injuries at the hands of any of these Defendants' subordinates. A Section 1983 claim cannot be maintained against a governmental employer in a case where there is no underlying constitutional violation by the employee. See *Grayson v. Peed*, 195 F.3d 692, 697 (1999) ("As there are no underlying constitutional violations by any individual, there can be no municipal liability."); *Temkin v. Frederick Cnty Comm'rs*, 945 F.2d 716, 724 (4th Cir. 1991) ("A claim of inadequate training under section 1983 cannot be made out against a supervisory authority absent a finding of a constitutional violation on the part of the person being supervised."). Thus, the claims in Count Three against the supervisor Defendants should be dismissed.

## B. Count Four

In Count Four of Plaintiffs' complaint, they allege a Fourth Amendment violation against federal defendant Robert L. Manchas pursuant *Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics*, 403 U.S. 388 (1971). A *Bivens* cause of action is available against federal officers in their individual capacities; however, federal law enforcement officers are also generally entitled to qualified immunity from suit for acts committed in their performance of discretionary functions unless their conduct violates clearly established constitutional rights. *Harlow v. Fitzgerald*, 457 U.S. 800 (1982). Accordingly, in order to survive a motion to dismiss

---

[1] "Establishing a 'pervasive' and 'unreasonable' risk of harm requires evidence that the conduct is widespread, or at least has been used on several different occasions and that the conduct engaged in by the subordinate poses an unreasonable risk of harm or constitutional injury." *Shaw*, 13 F.3d at 799. "A plaintiff may establish deliberate indifference by demonstrating a supervisor's 'continued inaction in the face of documented widespread abuses.'" *Id.*

on a *Bivens* claim, Plaintiffs must specifically allege facts that, if true, would prove a violation of a "clearly established constitutional rights of which a reasonable person would have known." *Id*. at 818.

The constitutional right which Plaintiffs appear to place in question is the right to be free from unreasonable searches and seizures, which encompasses the right to be free from arrests, investigatory stops, or other seizures effectuated unlawfully. Here, as already outlined in the above analysis related to Plaintiffs' § 1983 claims, no constitutional violations have taken place. The Assessor did not undertake an unlawful search of the property, nor did the officers who later came to the Coveys' home. Upon seeing the marijuana plants in plain view, they then had probable cause to arrest Defendants and probable cause to seek out a search warrant for the property. Because no constitutional violations have taken place, no action pursuant to *Bivens* can be maintained and these claims must be dismissed.

**C. State Law Claims: Counts One, Two, Five and Six**

Finally, Plaintiffs also assert state law causes of action for negligent training and supervision, intentional infliction of emotional distress, false arrest and imprisonment, and violations of Articles 3-6 and 3-10 of the West Virginia Constitution. As outlined in the preceding analysis, the undersigned recommends dismissal of Plaintiffs' claims under §1983 and dismissal of Plaintiffs' claims brought under *Bivens*. Accordingly, there are only Plaintiffs' four remaining state law claims at issue in this suit.

As a rule, supplemental jurisdiction allows federal courts to hear and decide state-law claims along with federal-law claims when they "are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy." 28 U.S.C. §

1367(a); *Wisconsin Dep't of Corrections v. Schacht*, 524 U.S. 381, 387 (1998). Discretion rests with the district court to decline to exercise supplemental jurisdiction when:

    (1) The claim raises a novel or complex issue of state law,

    (2) The claim substantially predominates over the claim or claims over which the district court has original jurisdiction,

    (3) The district court has dismissed all claims over which it has original jurisdiction, or

    (4) In exceptional circumstances, there are other compelling reasons for declining jurisdiction

28 U.S.C. § 1367(c).

"It has been consistently recognized that pendent jurisdiction is a doctrine of discretion, not of plaintiff's right. . . . [I]f the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well." *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966). Therefore, in light of the recommended dismissal of the federal claims at this early stage, the undersigned also recommends that the Court decline to exercise supplemental jurisdiction over Plaintiffs' state law claims, and, instead should dismiss those claims without prejudice.

## V. RECOMMENDATION

The undersigned recommends that the claims brought pursuant to § 1983 and *Bivens* be **DISMISSED WITH PREJUDICE** for failure to state a cause of action. Furthermore, the undersigned recommends that the Court decline to exercise supplemental jurisdiction over the state law claims, and that they be **DISMISSED WITHOUT PREJUDICE**.

Any party may, within fourteen [14] days of the filing of this recommendation, file with the Clerk of Court written objections identifying those portions of the recommendation to which

objection is made and the basis for such objections. A copy of any objections shall also be submitted to Senior Judge Frederick P. Stamp, Jr., United States District Judge. Failure to timely file objections to this recommendation will result in waiver of the right to appeal from a judgment of this Court based upon such recommendation. 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985): *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984), *cert. denied*, 467 U.S. 1208 (1984).

The Clerk is directed to mail a copy of this Report and Recommendation to the *pro se* plaintiffs by certified mail, return receipt requested, to their last known address as reflected on the docket sheet, and to any other counsel of record, as applicable.

DATED: November 5, 2012                    /s/ *James E. Seibert*
                                           JAMES E. SEIBERT
                                           UNITED STATES MAGISTRATE JUDGE