IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

CHRISTOPHER J. COVEY and
LELA G. COVEY,

    Plaintiffs,

v.                               Civil Action No. 5:11CV147
                                              (STAMP)

UNITED STATES OF AMERICA,
ASSESSOR OF OHIO COUNTY,
KATHIE HOFFMAN, Head Assessor,
ROY CREWS, Field Deputy,
UNKNOWN ASSESSOR,
OHIO COUNTY SHERIFF,
PATRICK BUTLER, Sheriff,
ALEX ESPEJO, Corporal,
RON WHITE, Deputy,
NELSON CROFT, Lieutenant,
NICHOLE SEIFERT, Officer,
HNK, Unknown Officer,
DLG, Unknown Officer,
DEPARTMENT OF JUSTICE-
DRUG ENFORCEMENT ADMINISTRATION,
OHIO VALLEY DRUG TASK FORCE,
ROBERT L. MANCHAS, S.A.,
OHIO COUNTY ANIMAL SHELTER,
DOUG McCROSKY, Supervisor
and UNKNOWN DOG WARDENS,

    Defendants.

**MEMORANDUM OPINION AND ORDER
AFFIRMING AND ADOPTING REPORT AND
RECOMMENDATION OF MAGISTRATE JUDGE**

I. Background

On October 20, 2011, the pro se[1] plaintiffs filed this civil rights action against the above-named defendants pursuant to Bivens

---

[1] "Pro se" describes a person who represents himself in a court proceeding without the assistance of a lawyer. Black's Law Dictionary 1341 (9th ed. 2009).

v. Six Unknown Named Agents of the Federal Bureau of Narcotics, 403 U.S. 388 (1971).  The complaint also raises a number of state law causes of action.  The plaintiffs assert that their claims arise from the following events:  On October 21, 2009, defendant Roy Crews ("Crews"), an employee of the Ohio County Assessor's Office, entered onto the plaintiffs' property in order to assess it for tax purposes.  Following his entrance onto the property, defendant Crews, during his inspection, saw what he believed to be marijuana in the back patio area of the home.  After making this discovery, defendant Crews placed a telephone call to inform Patrick Butler of the Ohio County Sheriff's Department of the same.  Based upon the information provided by defendant Crews, the Ohio County Sheriff's Department sent officers Alex Espejo and Robert Manchas to the plaintiffs' home.  Upon arrival at the home, the officers knocked on the front door and, receiving no answer, proceeded to the back of the home where they found Mr. Covey and observed the marijuana earlier observed by defendant Crews.  The officers also noted the scent of marijuana at that time.  Mr. Covey also allegedly made admissions regarding drug paraphernalia in the home, and Corporal Espejo left to obtain a warrant to search the house, leaving Deputy Ron White with Mr. Covey.

While Corporal Espejo was obtaining the search warrant for the home, Mrs. Covey returned to the home and was placed in handcuffs. Following Corporal Espejo's return with the warrant, a search was

executed of the home and the plaintiffs were arrested and taken to jail to be booked.  Later in the evening, the plaintiffs' son returned home to find Corporal Espejo in the home searching Mrs. Covey's computer.  Also while the plaintiffs' son was present, two unnamed officers of the Ohio County Dog Warden arrived and seized the family's raccoon.

After the plaintiffs' complaint was filed in this Court, it was referred to United States Magistrate Judge James E. Seibert for initial review and report and recommendation. After a preliminary review, the magistrate judge directed that the defendants be served and file a response.  In response, all defendants filed motions to dismiss.  Defendants, the Assessor of Ohio County, Patrick Butler, Roy Crews, Nelson Croft, DLG, Alex Espejo, HNK, Kathie Hoffman, Doug McCrosky, Ohio County Animal Shelter, Ohio County Sheriff, Ohio Valley Drug Task Force, Nichole Seifert, Unknown Assessor, Unknown Dog Wardens, and Ron White, filed a joint motion to dismiss, and the Ohio Valley Task Force filed a separate motion to dismiss.  The United States, by the Drug Enforcement Administration ("DEA"), also filed a separate individual motion to dismiss,[2] and

---

[2] Pursuant to the Federal Tort Claims Act, 28 U.S.C. § 1346(b), 2671 et seq., the United States, through the DEA, has been substituted for the individually named federal defendant, Robert L. Manchas in Counts II, V and VI. In accordance with the Act, the United States Attorney General, by the United States Attorney for this district, certified to this Court that defendant Manchas was acting within the scope of his employment as an employee of the United States at the time of the incidents giving rise to the allegations in those claims.  Thus, the Act mandates that the

the individually named federal defendant, Robert L. Manchas ("Manchas") filed an individual motion to dismiss.

The plaintiffs responded to each of these motions following the issuance of a Roseboro[3] notice, and the Task Force, and defendant Manchas filed replies. The plaintiffs filed a rebuttal to defendant Manchas' reply, which defendant Manchas has moved to strike as filed without leave of court.[4]

Magistrate Judge Seibert entered a report and recommendation wherein he recommended that the plaintiffs' federal civil rights claims be dismissed for failure to state a claim, that this Court decline to exercise supplemental jurisdiction over the state law claims raised in the complaint as a result, and that the state law claims be dismissed without prejudice subject to refiling in state court. The plaintiffs filed objections to the report and recommendation, and defendant Manchas filed a response to the same. For the reasons set forth below, this Court finds that the report

---

exclusive remedy for the claims against him is a suit against the United States of America. The only count which remains against defendant Manchas is Count IV. Count IV is the subject of defendant Manchas' individual motion to dismiss.

[3]Roseboro v. Garrison, 528 F.2d 309, 310 (4th Cir. 1975) (finding that the court must inform a pro se plaintiff of his right to file material in response to a motion for summary judgment).

[4]As the plaintiffs' rebuttal to defendant Manchas' reply was filed without leave of court, as is required by Local Rule 7.02, defendant Manchas' motion to strike the plaintiffs' rebuttal is granted. However, this Court has read and considered the rebuttal and finds that the ultimate conclusions reached by this Court and set forth herein are not altered by the contents of that document.

4

and recommendation by the magistrate judge must be affirmed and adopted in its entirety. The plaintiffs' federal civil rights claims are thus dismissed with prejudice, and the plaintiffs' state law claims are dismissed without prejudice for lack of subject matter jurisdiction.

## II. Legal Standard

Pursuant to 28 U.S.C. § 636(b)(1)(C), this Court must conduct a <u>de novo</u> review of any portion of the magistrate judge's recommendation to which objection is timely made. Because the plaintiffs filed objections to the report and recommendation, the magistrate judge's recommendation will be reviewed <u>de novo</u>.

## III. Discussion

The magistrate judge's report and recommendation addresses the plaintiffs' claims individually, rather than the individual motions to dismiss filed by the defendants. For ease of comparison and review, this Court will conduct its review of the magistrate judge's findings in the same manner. Counts I, II, V and VI are state law claims, and thus will be addressed following this Court's review of the plaintiffs' federal civil rights claims–Counts III and IV.

A. <u>Count III</u>

Count III raises a 42 U.S.C. § 1983 claim against the Ohio County Sheriff's Department and its officers named in the complaint, the Assessor of Ohio County and its officers named in

5

the complaint, and the Ohio County Animal Shelter and its officers named in the complaint. The count alleges deliberate indifference to the plaintiffs' civil rights in the form of unreasonable search and seizure.

In order to state a claim for violation of the plaintiffs' Fourth Amendment rights against unreasonable search and seizure, the plaintiffs must show first that there was a "search" as that term is defined in the context of the Fourth Amendment. A Fourth Amendment "search" only occurs when the plaintiffs demonstrate that (1) they had a subjective expectation of privacy in the location of the alleged search, and that (2) society is willing to accept that subjective expectation of privacy as a reasonable one. See Katz v. United States, 389 U.S. 347 (1967).

1. Tax assessor

The first allegedly unreasonable search claimed by the plaintiffs is the entrance onto the plaintiffs' property by the state tax assessor, namely defendant Roy Crews. As noted above, defendant Crews came to the plaintiffs' home for the purpose of assessing the value of their property for tax purposes, and upon entering the plaintiffs' backyard, viewed what he believed to be marijuana on the plaintiffs' back patio. This discovery prompted him to notify the Ohio County Sheriff's Office of the same.

With the standard for a "search" outlined above in mind, this Court agrees with the magistrate judge that defendant Crews'

activity on the plaintiffs' property did not constitute a "search" under the Fourth Amendment. As the magistrate judge states in his report and recommendation, the tax assessor, in performing a naked eye, ordinary observation of the front and back of the plaintiffs' house for the purposes of assessing its value, did nothing unduly intrusive, and thus did not commit a "search." While this Court does not disagree that the plaintiffs had a subjective expectation of privacy as to defendant Crews' entrance into the backyard of their home, it cannot conclude that the second prong of <u>Katz</u> can be met in this circumstance.

Much like a property owner has no reasonable expectation of privacy with regard to a meter reader or postal worker entering the curtilage of his or her home for the purposes of reading utility meters and delivering mail, neither do the Coveys have a reasonable expectation of privacy with regard to items viewable by the naked eye from the curtilage of their home when a property tax assessor is executing the responsibilities of his employment. There is no evidence to suggest that Mr. Crews did anything beyond executing the normal responsibilities of his employment as a tax assessor, and thus no search was conducted by him under the test delineated in <u>Katz</u>. <u>See</u> <u>Wildgren v. Maple Grove Twp.</u>, 429 F.3d 575 (6th Cir. 2005) ("[A] property assessor does not conduct a Fourth Amendment search by entering the curtilage for the tax purpose of naked eye observations of the house's plainly visible exterior attributes and

7

dimension."); Taylor v. Mich. Dep't of Natural Res., 502 F.3d 452, 456-57 (6th Cir. 2007) (Noting the importance of the "methods of observation and purpose of [the entrant's] conduct" in determining whether a search occurred).

The plaintiffs argue in their objections to the magistrate judge's report and recommendation that "No Trespassing" signs were posted on their property as evidence that Mr. Crews' entrance onto their property constituted a "search" under the Fourth Amendment. They point to the West Virginia assessor's statute, and argue that the statute clearly precludes assessors from entering "posted, private property" at all. However, even if defendant Crews did violate the assessor's statute or any internal policy of the state tax assessor, a determination which this Court does not here make, this does not constitute evidence of a constitutional violation. See Hovater v. Robinson, 1 F.3d 1963, 1068 n.4 (10th Cir. 1993) (Violation of agency policy "does not equate to a constitutional violation.").

2. Police officers

The next alleged "search" to which the plaintiffs point occurred when defendant Crews contacted the Ohio County Sheriff's Office and officers were dispatched to the plaintiffs' property to investigate the call. This Court agrees with the magistrate judge's conclusion that this entrance onto the plaintiffs' property was in accordance with the officers' constitutional ability to

8

conduct a "knock and talk." In the United States Court of Appeals for the Fourth Circuit, a "knock and talk," wherein law enforcement officers approach the entrance of a person's home in order to ask questions of occupants, is not a situation which requires a warrant or probable cause to be valid. See United States v. Taylor, 90 F.3d 903, 909 (4th Cir. 1996) (finding that approaching the front door of the defendant's home and knocking was permissible as the defendant's "front entrance was as open to the law enforcement officers as to any delivery person, guest, or other member of the public"). In Davis v. United States, 327 F.2d 301 (9th Cir. 1964), an opinion cited with approval by the Fourth Circuit in Taylor, the Ninth Circuit held that when police officers have reasonable suspicion which would make it reasonable for them to desire to question a person regarding their suspicions, no "right of privacy" is invaded by officers or anyone else walking up to that person's home "with the honest intent of asking questions of the occupant thereof." Id. at 303.

In this case, in the criminal complaint, as well as in the plaintiffs' complaint filed in this Court, it is clear that when the officers arrived at the plaintiffs' home in order to conduct a "knock and talk," Mr. Covey was present on the property and was on the back patio at a workbench. Realizing that Mr. Covey was not inside the house, the officers proceeded to the backyard in order to speak with him there. It was there, once in the backyard

speaking with Mr. Covey, that the officers first viewed marijuana on the workbench and on the patio behind the home.

The plaintiffs do not argue, based upon these facts, that the officers' approach to the house could not be considered a valid "knock and talk." Rather, they assert that such a "knock and talk" cannot continue into a person's backyard, especially their backyard in particular, because no walkway into the backyard existed to suggest that visitors were welcome to proceed thereto in order to speak with any occupants of the home who may be located behind the house. They also argue that the officers could not have seen anyone located in the back of the house without first proceeding away from the "parking area" and the entrance to the home. This Court disagrees.

In the Fourth Circuit, it has been established that police may proceed into a person's backyard without a warrant "to speak with the homeowner . . . when circumstances indicate that they might find him there." Alvarez v. Montgomery Cnty, 147 F. 3d 354, 356 (4th Cir. 1998); United States v. Bradshaw, 490 F.2d 1097, 1100 (4th Cir. 1974). Despite the plaintiffs' arguments to the contrary, it is clear to this Court that the officers arriving at the plaintiffs' residence were confronted with circumstances that led them to believe that they may find Mr. Covey in the backyard, and that they were thus not in violation of the Fourth Amendment when they proceeded there to speak with him. First, as the

plaintiffs admit, Mr. Covey was located in the backyard on the patio when the officers came to the back to see him. Secondly, the pictures of the property provided by the plaintiffs make clear that the view of the backyard patio area is not impeded from the vantage point of the parking area near the garage of the home. The plaintiffs argue that, had the officers parked in the proper "visitors" parking area of the home, they would not have been able to view the backyard. However, the parking area in the pictures provided is gravel and is not clearly delineated, and there is no indication of a specified area for visitor parking to the exclusion of other areas. Further, the photographs of the driveway clearly show that anyone proceeding up the driveway would have a clear view of the backyard area. Finally, the statements of Corporal Espejo submitted in the criminal complaint indicate that the officers were able to see Mr. Covey "standing under the deck near the rear basement walk out door" upon their arrival. ECF No. 35 Ex. 2 *1.

As noted above, the plaintiffs also argue that, notwithstanding the general rule in Alvarez, in this particular case, the officers exceeded the bounds of a valid "knock and talk" in proceeding to the backyard, because their home does not have a walkway which would indicate that the public was welcome to proceed to the backyard. This Court acknowledges that the Fourth Circuit has articulated an exception to this general rule where it can be shown that police were met with "clear indication that the

11

homeowner intended to exclude uninvited visitors" from the backyard. Edens v. Kennedy, 112 F. App'x 870, 875 (4th Cir. 2004) (unpublished). However, it is clear to this Court that the plaintiffs did not so indicate in this case. It is true that no clear walkway exists between the plaintiffs' driveway and their backyard, but there is also no fence, no sign directing visitors to not enter the backyard, nor even any marked ending to the area where the public would be welcome. As such, this Court overrules the plaintiffs' objections in this regard and concurs with the magistrate judge's conclusion that the officers proceeded into the backyard in the basis of a valid "knock and talk" and thus did not violate the plaintiffs' Fourth Amendment rights in doing so.

3. <u>Search warrant</u>

As a result of the foregoing, this Court also agrees with the magistrate judge that the search warrant obtained by Corporal Espejo following the valid knock and talk was based upon probable cause, and thus also constitutionally valid. It was after the officers' valid entry into the backyard that officers were able to view what they believed to be marijuana, in plain view on the patio, and to obtain an admission of the same from Mr. Covey.[5]

---

[5]This Court is unable to discern from the record whether or not Mr. Covey's admissions prior to the officer's obtaining the search warrant, which admissions are noted in the criminal complaint filed on the record, are disputed. However, it seems clear that the existence of marijuana in view on the patio, and the fact that the scent of marijuana was recognizable in the backyard, are not disputed. Accordingly, this Court finds that probable

12

These discoveries while the officers were legally present in the plaintiffs' backyard are sufficient to create probable cause to obtain a search warrant for the house.

The plaintiffs also argue that the actual search warrant obtained was invalid because it was unconstitutionally overbroad. However, the plaintiffs offer little factual basis for this claim. Their arguments in this regard simply state the allegation then support it with quotations and statements from cases finding other warrants to be unconstitutionally overbroad. The only support which the plaintiffs give for their allegation that this particular search warrant did not contain the "particularly [sic] and specificity" required by the Fourth Amendment is that "officer Espejo failed to cross out 'evidence of a crime,' meaning that any evidence of any crime in any jurisdiction could be confiscated." ECF No. 55 *7-*8. This Court disagrees.

The search warrant obtained by Corporal Espejo, and which was used as the basis to search the plaintiffs' property, specifically provides that the warrant was based upon suspicions that Mr. Covey had engaged in the manufacture, delivery, or possession with intent to deliver marijuana, in violation of the specific West Virginia Code § 60A-4-401(a)(ii). The search warrant also specifically describes the location covered by the search warrant as the

---

cause to obtain a search warrant existed regardless of whether Mr. Covey made any type of admissions to the officers.

plaintiffs' house and surrounding property. The grounds for probable cause are also attached to the search warrant.

Accordingly, the search warrant specifically notes that the limits of the warrant were with regard to suspicions of unlawful manufacture, delivery, or possession with intent to deliver marijuana, and that the physical bounds of the warrant were within the plaintiffs' property at 222 Castlemans Run Road, Valley Grove, Ohio County, West Virginia. As such, the plaintiffs' claim that the search warrant was invalid is without merit.

4. Dog wardens

Finally, the plaintiffs argue that the dog wardens' seizure of the plaintiffs' raccoon following their arrest constitutes a Fourth Amendment violation. As the magistrate judge noted, it is clear that the dog wardens' actions in this case constituted a search, as they entered the home of the plaintiffs, and that the warrant obtained by police did not provide for the seizure of the raccoon. Thus, the dog wardens' seizure of the raccoon constituted a warrantless search and seizure. However, as the magistrate judge also asserted, the Fourth Amendment only protects against "unreasonable" warrantless search and seizure. In order to determine whether a warrantless seizure is "unreasonable," a court must weigh "the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion."

14

United States v. Place, 462 U.S. 696, 703 (1983). In this particular case, with regard to the plaintiffs' pet raccoon, this Court agrees with the magistrate judge's conclusion that the importance of the governmental interests clearly justify the intrusion of the seizure of the raccoon.

First, the state has a strong public health and safety interest in removing wild animals from a private residence. Secondly, as the magistrate judge pointed out, it is clear that, beyond the state's interests with regard to health and safety of its citizens, the plaintiffs, the pet raccoon's caretakers, had been arrested, and were thus unable to care for the raccoon for a yet-to-be-determined amount of time. Thus, the state had a pressing and important interest in protecting the well-being of the raccoon, which would no longer be provided with the necessities of life for the time that the plaintiffs were in custody. Accordingly, the dog wardens' seizure of the plaintiffs' raccoon was not unreasonable under the circumstances, and no Fourth Amendment violation can be found as to their actions.

5. Allegations against supervisors and entities

Finally, the plaintiffs' claims under Count III against defendants Doug McCrosky, Sheriff Patrick Butler, Kathie Hoffman, the Assessor of Ohio County, the Ohio County Sheriff, and the Ohio County Animal Shelter also must be dismissed. All of these defendants serve in supervisory roles above the above-discussed

actors in this case–Doug McCrosky is the supervisor of the Ohio County Animal Shelter, Patrick Butler is the Sheriff of Ohio County, and Kathie Hoffman is the Assessor of Ohio County. As the magistrate judge correctly notes, in a § 1983 claim such as this, none of these supervisors or municipal entities can be held liable under a theory of respondeat superior. However, a supervisor can be held liable if a subordinate's acts which violated a person's constitutional rights were conducted in accordance with an official policy for which the supervisor is responsible, or if the supervisor was aware of the conduct and failed to respond to the point that the failure to respond constitutes "deliberate indifference" to the risk of constitutional violation. Fisher v. Washington Metro. Area Transit Auth., 690 F.2d 1113 (4th Cir. 1982); Shaw v. Stroud, 13 F.3d 791, 799 (4th Cir. 1994), cert. denied, 513 U.S. 813 (1994).

Acknowledging this, the plaintiffs argue in their objections that, based upon the facts and evidence presented in their complaint and in the briefing of the defendants' various motions to dismiss, the supervisors named as defendants "were directly involved in [the allegations made in] this case." ECF No. 55 *11. However, whether or not this argument by the plaintiffs is true, based upon the facts and evidence presented, it is irrelevant to this Court's determination at this point. Supervisors and governmental entities cannot be found liable when no constitutional

16

violations have been found as to the activities of their subordinates or employees. See Grayson v. Peed, 195 F.3d 692, 697 (4th Cir. 1999) ("As there are no underlying constitutional violations by any individual, there can be no municipal liability.") As such, because this Court found that no constitutional violations occurred at any time with regard to any of the events or actors noted in the plaintiffs' complaint, the supervisors and entities named cannot be held liable under § 1983 as a result of any of those actions or events. Count III is thus dismissed in its entirety.

B.  Count IV

Count IV raises a Bivens claim based upon the same allegations and facts as Count III, but raises it against the federal defendant, Detective Robert Manchas. As explained in detail above, this Court finds that no constitutional violations took place as the result of any actions or events to which the plaintiffs point in their complaint. As such, no Bivens claim can be maintained against Detective Manchas, and Count IV is also dismissed in its entirety.

C.  Counts I, II, V and VI

For the reasons explained above, this Court affirms and adopts the magistrate judge's recommendation to dismiss Counts III and IV of the plaintiffs' complaint. The remaining counts-Counts I, II, V, and VI-all present state law causes of action, and no federal

17

claims remain.  As a result, this Court's only basis for subject matter jurisdiction over this case have now been dismissed, and this Court may only exercise continuing jurisdiction based upon the doctrine of supplemental jurisdiction.  <u>See</u> 28 U.S.C. 1367(a).  The determination of whether to continue to exercise supplemental jurisdiction over a case following the dismissal of all federal claims is one reserved to the discretion of the district court.

However, it has been widely determined that, in the interest of comity, federal courts should decline to exercise continuing supplemental jurisdiction over state law claims if federal claims are dismissed early in the litigation of a case.  <u>United Mine Workers of Am. v. Gibbs</u>, 383 U.S. 715, 726 (1966).  As this Court agrees with the magistrate judge that the federal claims in this case have been dismissed at a very early stage of the litigation of this matter, this Court will exercise its discretion to decline to exercise supplemental jurisdiction over Counts I, II, V, and VI, and will dismiss these claims without prejudice.

## IV. <u>Conclusion</u>

Having reviewed the magistrate judge's report and recommendation <u>de novo</u>, this Court hereby AFFIRMS and ADOPTS the report and recommendation in its entirety.  Defendant Robert L. Manchas' motion to strike the plaintiffs' rebuttal to his motion to dismiss (ECF No. 52) is GRANTED.  All pending motions to dismiss (ECF Nos. 27, 32, 43 and 44) are GRANTED AS FRAMED.  Counts III and

IV of the plaintiffs' complaint are DISMISSED WITH PREJUDICE. Counts I, II, V, and VI are DISMISSED WITHOUT PREJUDICE. It is ORDERED that this civil action be DISMISSED and STRICKEN from the active docket of this Court.

Should the plaintiffs choose to appeal the judgment of this Court to the United States Court of Appeals for the Fourth Circuit on the issues to which objection was made, they are ADVISED that they must file a notice of appeal with the Clerk of this Court within 60 days after the date of the entry of the judgment order.

IT IS SO ORDERED.

The Clerk is DIRECTED to transmit a copy of this memorandum opinion and order to the pro se plaintiffs by certified mail and to counsel of record herein. Pursuant to Federal Rule of Civil Procedure 58, the Clerk is DIRECTED to enter judgment on this matter.

DATED: January 25, 2013

/s/ Frederick P. Stamp, Jr.
FREDERICK P. STAMP, JR.
UNITED STATES DISTRICT JUDGE