IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

CHRISTOPHER J. COVEY and
LELA G. COVEY,

      Plaintiffs,

v.                                              Civil Action No. 5:11CV147
                                                          (STAMP)

UNITED STATES OF AMERICA
ASSESSOR OF OHIO COUNTY
KATHIE HOFFMAN, Head Assessor,
ROY CREWS, Field Deputy,
UNKNOWN ASSESSOR,
OHIO COUNTY SHERIFF,
PATRICK BUTLER, Sheriff,
ALEX ESPEJO, Corporal,
RON WHITE, Deputy,
NELSON CROFT, Lieutenant,
NICOLE SEIFERT, Officer,
HNK, Unknown Officer,
DLG, Unknown Officer,
DEPARTMENT OF JUSTICE-
DRUG ENFORCEMENT ADMINISTRATION,
OHIO VALLEY DRUG TASK FORCE,
ROBERT L. MANCHAS, S.A.,
OHIO COUNTY ANIMAL SHELTER,
DOUG McCROSKY, Supervisor,
and UNKNOWN DOG WARDENS

      Defendants.


**MEMORANDUM OPINION AND ORDER
DENYING PLAINTIFFS' MOTION FOR DEFAULT,
DENYING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT,
GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT
DENYING AS MOOT DEFENDANTS' MOTIONS IN LIMINE AND
MOTIONS TO JOIN MOTIONS IN LIMINE AND VACATING
PRETRIAL CONFERENCE AND TRIAL**

This is a civil rights case in which the pro se[1] plaintiffs claim that tax assessors and law enforcement officers violated their Fourth Amendment rights by conducting unreasonable searches of the curtilage of their home. This Court previously dismissed the complaint for failure to state a claim. The United States Court of Appeals for the Fourth Circuit reversed and remanded, concluding that the plaintiffs had stated claims for violations of their Fourth Amendment rights under 42 U.S.C. § 1983 and Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics, 403 U.S. 388 (1971). Covey v. Assessor of Ohio Cnty., 777 F.3d 186, 198 (4th Cir. 2015). On remand, the plaintiffs' claims are limited to whether the tax assessors conducted an unreasonable search of the plaintiffs' curtilage and home, and whether the knock-and-talk exception to the Fourth Amendment's warrant requirement applies to the law enforcement officers' search of the plaintiff's curtilage. After conducting discovery, the parties have now filed cross motions for summary judgment, the plaintiffs have filed a motion for the entry of all defendants's default, and the defendants have filed motions in limine. For the following reasons, the defendants' motions for summary judgment are granted, and the plaintiffs' motion for summary judgment and motion for default are denied.

---

[1]"Pro se" describes a person who represents himself in a court proceeding without the assistance of a lawyer. Black's Law Dictionary 1416 (10th ed. 2014).

## I.  Background

Two data collectors for the Ohio County Assessor, who were recently identified as Katrina Taylor ("Taylor") and Kyle Namack ("Namack"),[2] approached the newly built house of the plaintiffs, Christopher and Lela Covey ("the Coveys"), to collect data. ECF Nos. 113-1 at 1-2, 113-2 at 1. The data collectors knocked on the front door, but nobody answered. ECF No. 113-1 at 2. Then they went around to the back of the house, where the Coveys have a patio under a deck with a sliding-glass door. ECF No. 113-1 at 2, 111-2 at 17. Again the assessors knocked, but nobody answered. In the patio area, the assessors noticed what appeared to be marijuana on a workbench, in a dehydrator, and in various containers. ECF Nos. 113-1 at 2, ECF No. 107-5 at 2. In his deposition, Christopher Covey testified that the marijuana was in a green plastic container and a container with a clear lid, which were both sitting in an open blue, plastic bin under the workbench, ECF No. 108-1 at 3-6. Taylor stated that she and Namack did not open any containers. ECF No. 113-1 at 2. Taylor called the sheriff's department and gave them a tip about the marijuana. ECF No. 107-5 at 2. The data collectors left a pamphlet and a business card featuring the

---

[2]It is unclear how Kyle Namack's last name is spelled. Taylor's affidavit spells it "Namack," (ECF No. 113-1 at 2), while Kathie Hoffman's affidavit spells it "Namic." ECF No. 113-2 at 1. For consistency, this Court will use the spelling "Namack" from Taylor's affidavit.

Assessor and Deputy Assessor's names and the address of the Assessor's Office.  ECF No. 115-4.

The sheriff's department then contacted Corporal Alex Espejo, a member of the sheriff's department and Ohio Valley Drug Task Force, about the tip.  ECF No. 107-5 at 2, 108-3 at 3, 108-4 at 3. Corporal Espejo and Special Agent Manchas of the Drug Enforcement Administration set out for the Coveys' house to investigate the tip.  ECF No. 108-3 at 3, 108-4 at 3.  The officers drove up the Coveys' long driveway, which approaches the house from behind, then curves up to the right side of the house.  ECF No. 108-3 at 3-4, 108-4 at 3, 111-2 at 23-28.  As the officers approached the house, they saw Christopher Covey on the patio at the back of the house. ECF No. 108-3 at 3-4, 108-4 at 3.  The officers parked their vehicle at the end of the driveway on the right side of the house. ECF No. 108-3 at 4-5, 108-4 at 3.  They approached Covey at the back patio, and he met them as they approached.  ECF No. 108-3 at 4-5, 108-4 at 3.  The officers saw marijuana on Covey's workbench and could smell the odor of marijuana.  ECF No. 108-3 at 5, 108-4 at 3.  They handcuffed Covey and Corporal Espejo approached the workbench, observing marijuana on the workbench, in a dehydrator, in an opaque plastic container, and in an open plastic container. ECF No. 108-3 at 5-6, 108-4 at 4.  The officers read Covey his <u>Miranda</u> rights and questioned him.  ECF No. 108-3 at 5, 108-4 at 3-4.  Corporal Espejo left the house to get a search warrant.  ECF

No. 107-5 at 2-3, 108-3 at 6.  He returned, and officers from the sheriff's department executed the search warrant, finding forty-eight marijuana plants on the Coveys' property.  ECF No. 108-3 at 6.

Christopher Covey pleaded guilty to manufacturing marijuana and served several months of home confinement.  ECF No. 108-3 at 6. After Christopher Covey served his time, the Coveys filed this civil action stating violations of the Fourth Amendment under 42 U.S.C. § 1983 and various state law causes of action against Ohio County Assessor Kathie Hoffman ("Hoffman"), Deputy Assessor Roy Crews ("Crews"), an unknown assessor, Ohio County Sheriff Patrick Butler, the Ohio Valley Drug Task Force, Corporal Espejo, the officers from the sheriff's department who helped execute the search warrant, the Ohio County Animal Shelter, and the Dog Warden. They also alleged a cause of action under <u>Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics</u>, 403 U.S. 388 (1971), against Agent Manchas for allegedly violating the Fourth Amendment.  The defendants filed motions to dismiss for failure to state a claim and for lack of subject matter jurisdiction over the state law claims.  This Court granted those motions and dismissed all of the Coveys' claims.

The Coveys appealed to the Fourth Circuit on their § 1983 claims against Hoffman, Crews, an unnamed assessor, and Corporal Espejo and their <u>Bivens</u> claim against Agent Manchas.  The Fourth

Circuit reversed and remanded, concluding that "the Coveys . . . sufficiently pleaded under § 1983 and <u>Bivens</u> that Crews, Corporal Espejo, and Special Agent Manchas violated clearly established law under the Fourth Amendment." <u>Covey</u>, 777 F.3d at 198. After completing discovery, the parties each filed motions for summary judgement. Further, the Coveys filed a motion for the entry of all defendants' default, and the defendants filed motions in limine.

## II. <u>Discussion</u>

This Court must liberally construe <u>pro se</u> filings. <u>See</u> <u>Erickson v. Pardus</u>, 551 U.S. 89, 94 (2007); <u>Gordon v. Leeke</u>, 574 F.2d 1147, 1151 (4th Cir. 2007). However, "[a] district court is not required to act as an advocate for a <u>pro se</u> litigant," but must provide the <u>pro se</u> litigant with a reasonable opportunity to have potentially meritorious arguments be fully considered. <u>Gordon</u>, 574 F.2d at 1152-53.

### A. <u>Plaintiffs' Motion for Default</u>

The Coveys filed a motion seeking the entry of all defendants' default. They argue that default is proper because, after the Fourth Circuit remanded this civil action to this Court, the defendants did not file answers or other responses to the complaint after the remand until this Court, at a status and scheduling conference, directed them to do so. The defendants then promptly filed answers to the complaint.

Federal Rule of Civil Procedure 55(a) provides that the clerk must enter a defendant's default if the defendant "has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise." Fed. R. Civ. P. 55(a). Once the defendant's default is entered, the plaintiff must "apply to the court for a default judgment." Fed. R. Civ. P. 55(b)(2). Here, the defendants filed motions to dismiss the complaint within twenty-one days of being served with summonses and the complaint and have continued to defend themselves throughout the appeal and after the remand by the Fourth Circuit. The delay in filing answers did not unfairly prejudice the plaintiffs because the defendants' answers did not raise any new defenses that had not already been addressed by the parties. Thus, the defendants have not "failed to plead or otherwise defend," and the plaintiffs are not entitled to the entry of the defendants' default. Fed. R. Civ. P. 55(a).

B.  <u>Cross-Motions for Summary Judgment</u>

"When faced with cross-motions for summary judgment, the court must review each motion separately on its own merits to determine whether either of the parties deserve judgement as a matter of law." <u>Rossignol v. Voorhaar</u>, 316 F.3d 516, 523 (4th Cir. 2003) (internal quotation marks omitted). Under Federal Rule of Civil Procedure 56, this Court must grant a party's motion for summary judgment if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.

R. Civ. P. 56(a).  A fact is "material" if it might affect the outcome of the case.  Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986).  A dispute of material fact is "genuine" if the evidence "is such that a reasonable jury could return a verdict for the non-moving party."  Id.  If the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial," summary judgment must be granted against that party.  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  In reviewing the supported underlying facts, all inferences must be viewed in the light most favorable to the party opposing the motion.  See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

The party seeking summary judgment bears the initial burden of showing the absence of any genuine issues of material fact.  See Celotex, 477 U.S. at 322-23.  "The burden then shifts to the nonmoving party to come forward with facts sufficient to create a triable issue of fact."  Temkin v. Frederick County Comm'rs, 945 F.2d 716, 718 (4th Cir. 1991), cert. denied, 502 U.S. 1095 (1992).  However, "a party opposing a properly supported motion for summary judgment may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986).  Moreover, "[t]he nonmoving party

cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another." Othentec Ltd. v. Phelan, 526 F.3d 135, 140 (4th Cir. 2008) (internal quotation marks omitted). The nonmoving party must produce "more than a 'scintilla'" of evidence "upon which a jury could properly proceed to find a verdict for the party producing it." Id. (internal quotation marks omitted) (quoting Anderson, 477 U.S. at 251).

On appeal, the Coveys initially argued that this Court erred in dismissing all of its § 1983 and Bivens claims, but after the Fourth Circuit appointed counsel for the Coveys on their appeal, they reduced their appeal to their § 1983 claims against Hoffman, Crews, an unknown assessor, and Corporal Espejo and their Bivens claim against Agent Manchas.[3] The Fourth Circuit reversed and remanded, concluding that "the Coveys . . . sufficiently pleaded under § 1983 and Bivens that Crews, Corporal Espejo, and Special Agent Manchas violated clearly established law under the Fourth Amendment." Covey, 777 F.3d at 198. Thus, the Coveys' only remaining claims are their § 1983 claims against Hoffman, Crews, the unnamed assessor, and Corporal Espejo and their Bivens claim against Agent Manchas. All other claims were dismissed by this

---

[3] The plaintiffs have proceeded pro se since the Fourth Circuit remanded this Civil action to this Court.

Court, and the Coveys abandoned their appeal of the dismissal of those claims.

The Fourth Circuit also instructed this Court to consider whether Heck v. Humphrey, 512 U.S. 477 (1994), bars the Coveys' claims. However, none of the defendants raise this issue in their memoranda and it appears they have, thus, dropped that defense. Instead, the defendants argue that the Coveys have failed to present sufficient evidence to support a finding that any defendant violated their Fourth Amendment rights, and that all defendants are entitled to qualified immunity.

"The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Pearson v. Callahan, 555 U.S. 223, 231 (2009) (internal quotation marks omitted). Courts must consider two issues in determining whether an official is entitled to qualified immunity. Id. at 232. "First, a court must decide whether the facts that a plaintiff has . . . shown . . . make out a violation of a constitutional right. Second, . . . the court must decide whether the right at issue was 'clearly established' at the time of the defendant's alleged misconduct." Id. (citations omitted). A court need not consider these issues sequentially, but a finding against the plaintiff on either is dispositive. Id. at 231-32, 236. This Court concludes

that the Coveys failed to present sufficient evidence showing that any defendant violated their Fourth Amendment rights. Thus, this Court does not reach a determination of whether the Coveys' Fourth Amendment rights were "clearly established."

1. The Assessors' Search

a. Whether Hoffman or Crews Conducted a Search

The Coveys named in their complaint the Ohio County Assessor Kathie Hoffman, Deputy Assessor Roy Crews, and an unknown assessor, claiming that these defendants violated their Fourth Amendment rights by entering into their curtilage and home and by searching their curtilage. The defendants argue that there is no evidence that Hoffman or Crews participated in the search of the Coveys' property. The defendants submitted an affidavit from Katrina Taylor, a data collector in the Assessor's office, stating that she and Kyle Namack, another data collector, were the only assessors to enter the Coveys' property. ECF No. 113-1 at 1-2. Further, the defendants submitted an affidavit from Hoffman stating that she never went to the Coveys' property and that Taylor and Namack were the only assessors to enter the Coveys' property. ECF No. 113-2 at 1-2.

The Coveys offer two pieces of evidence that Hoffman and Crews were involved in the search. First, the Coveys provided a copy of

a pamphlet stating that "[a] representative, KAthie[4] [sic] [obscured] from my office visited or tried [obscured] visit [the Coveys'] property" on November 21, 2009, but found that the Coveys were not home. ECF No. 115-4. The pamphlet asks the Coveys to "complete [an attached] form and mail it back within 10 days" to the Assessor's Office. ECF No. 115-4. It also includes a form letter signed by Hoffman. ECF No. 115-4. Second, in his deposition, Christopher Covey stated that the pamphlet had Crews's business card attached to it. ECF NO. 113-5 at 5. The Coveys provided a copy of the business card as attached to the pamphlet. ECF No. 115-4. The card's heading states "**OHIO COUNTY ASSESSOR**" and provides Crews and Hoffman's names and titles, the address of the Assessor's office, and the West Virginia state seal. ECF No. 115-4. Taylor's affidavit states that neither she nor Namack "left any flyers, brochures, business cards, or any other information at the property." ECF No. 113-1 at 2.

However, both Hoffman and Taylor stated in their affidavits that neither Hoffman nor Crews were at the Coveys' property on November 21, 2009. ECF Nos. 113-1 at 1-2, 113-2 at 1-2. Only Taylor and Namack were at the Coveys' property that day. ECF Nos. 113-1 at 2, 113-2 at 1. The pamphlet and card do not contradict

---

[4]The name "KAthie" is handwritten on the pamphlet with the last name missing or obscured. ECF No. 115-4. This Court also notes that the handwriting seems to differ from other handwriting on the pamphlet, particularly when comparing the capital "A" as written in the address with the capital "A" as written in "KAthie."

Hoffman or Taylor's statements.  At best, the pamphlet and card show that <u>someone</u> from the Assessor's office was on the Coveys' property on November 21, 2009 and left the pamphlet and card there.

The presence of Hoffman and Crews's names on the pamphlet and card do not show that either of them were present.  As the Assessor and Deputy Assessor, one would expect Hoffman and Crews's names to be featured on any official documentation or correspondence. Further, the Coveys did not provide any deposition testimony from Hoffman regarding the pamphlet or whether she was at the Coveys' house that day.  Thus, the Coveys' claims that Hoffman and Crews were on their property based on only the pamphlet and business card is purely speculative and does not create a genuine issue of material fact.  <u>See</u> <u>Othentec</u>, 526 F.3d at 140 ("The nonmoving party cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another.").

This Court finds that no reasonable jury could infer that Hoffman or Crews entered the Coveys' property based on only the pamphlet and card.  Therefore, the Coveys failed to provide sufficient evidence that Hoffman or Crews violated their Fourth Amendment rights.

  b. <u>Whether the Plaintiffs May Amend the Complaint to Name Taylor or Namack as Defendants</u>

The Coveys named in their complaint Hoffman, Crews, and an unknown assessor.  It is now apparent from Taylor's affidavit that

she and Namack were the data collectors who entered the Coveys' property. Although the Coveys did not file a motion to amend their complaint to name Taylor or Namack in place of the unknown assessor, their memoranda on summary judgment argue that Taylor and Namack violated the Fourth Amendment. Thus, a court could construe those arguments as a request to amend the complaint to name Taylor and Namack as defendants.

A plaintiff may substitute named defendants by amending the complaint, and the court will freely grant such amendments "when justice so requires." Fed. R. Civ. P. 15(a)(2). However, a § 1983 claim must be brought within the statute of limitations of the state in which the claim arose. 42 U.S.C. § 1988(a). The court must apply that state's residual limitations period for personal injury suits. <u>Owens v. Okure</u>, 488 U.S. 235, 249-50 (1989). In West Virginia, the residual limitations period for personal injury suits is two years. W. Va. Code § 55-2-12. Taylor and Namack entered the Coveys' property on October 21, 2009. Thus, the statute of limitations for the Coveys' claims ran on October 21, 2011.

However, under Rule 15(c), an amendment that substitutes a defendant will relate back to the filing of the original complaint if it "asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out . . . in the original pleading" and

> within the period provided by Rule 4(m) for service of
> the summons and complaint, the party to be brought in by
> amendment:
>
> (i) received such notice of the action that it will not
> be prejudiced in defending on the merits; and
>
> (ii) knew or should have known that the action would have
> been brought against it, but for a mistake concerning the
> proper party's identity.

Fed. R. Civ. P. 15(c)(1)(C). "[L]ack of knowledge of the proper party to be sued [is not] a 'mistake' as that term is used in Rule 15(c)[(1)(C)]." <u>Locklear v. Bergman & Beving AB</u>, 457 F.3d 363, 366 (4th Cir. 2006).

Here, there is no dispute that the Coveys did not name Taylor or Namack because they lacked knowledge of their identities and did not learn their identities until discovery commenced after the Fourth Circuit remanded this civil action, well after Rule 4(m)'s 120-day service requirement.[5] The Coveys argued throughout this civil action that it was Hoffman and Crews who entered their property, and did not even begin to attempt to assert claims against Taylor or Namack until they received discovery from the defendants showing that Taylor and Namack were the data collectors who entered their property. Thus, to the extent that the Coveys' seek to amend the complaint to add Taylor or Namack as defendants, that amendment would not relate back to the time of the filing of

---

[5]Taylor's affidavit is dated December 17, 2015. ECF No. 113-1 at 2.

the complaint, and any § 1983 claims the Coveys have against Taylor or Namack are barred by the statute of limitations.

2. <u>The Knock-and-Talk</u>

The Coveys claim that Corporal Espejo and Agent Manchas violated their Fourth Amendment rights by entering, without a warrant, into the Coveys' backyard and searching their patio. The defendants argue that Corporal Espejo and Agent Manchas approached the home and interacted with Christopher Covey within the knock-and-talk exception to the Fourth Amendment's warrant requirement. The Coveys do not contest that their marijuana was otherwise in plain sight in their patio area when the officers were there.

To show a violation of their Fourth Amendment rights, the Coveys must show that the defendants conducted an unreasonable search. Under the Fourth Amendment, a "search" occurs only if the government intrudes into a place the plaintiff has a subjective expectation of privacy in, and the plaintiff's expectation of privacy is objectively reasonable, meaning that it is one that society is willing to accept as reasonable. <u>California v. Ciraolo</u>, 476 U.S. 207, 211 (1986). Such places include "homes and the 'land immediately surrounding and associated' with homes, known as curtilage." <u>Covey v. Assessor of Ohio Cnty.</u>, 777 F.3d 186, 192 (4th Cir. 2015) (quoting <u>Oliver v. United States</u>, 466 U.S. 170, 180 (1984)). The government must have probable cause to search a person's home or curtilage, and a warrantless search is presumed to

be unreasonable unless some exception to the Fourth Amendment's warrant requirement applies.  <u>Id.</u>

Under the knock-and-talk exception, "a police officer not armed with a warrant may approach a home and knock, precisely because that is no more than any private citizen might do." <u>Covey</u>, 777 F.3d at 192 (internal quotation marks omitted) (quoting <u>Florida v. Jardines</u>, 133 S. Ct. 1409, 1416 (2013)).  Thus, "there is an implicit license . . . to approach the home by the front path, knock promptly, wait briefly to be received, and then (absent invitation to linger longer) leave."  <u>Id.</u> at 192-93 (internal quotation marks omitted) (quoting <u>Jardines</u>, 133 S. Ct. at 1415). "An officer may also bypass the front door (or another entry point usually used by visitors) when circumstances reasonably indicate that the officer might find the homeowner elsewhere on the property." <u>Id.</u> at 193.  Thus, if an officer sees the homeowner outside the house, the officer may approach the homeowner directly without first approaching the front door.  <u>See Covey v. Assessor of Ohio Cnty.</u>, 777 F.3d 186, 193 (4th Cir. 2015) ("If the officers first saw Mr. Covey from a non-curtilage area, they may well prevail under the knock-and-talk exception at summary judgment."); <u>Alvarez v. Montgomery Cnty.</u>, 147 F.3d 354, 356, 358-59 (4th Cir. 1998) (concluding that the knock-and-talk exception applied where police entered the back yard after seeing a sign in the front yard stating "Party in Back").

The parties agree that Corporal Espejo and Agent Manchas approached the Coveys' house by way of the Coveys' long, curved driveway and parked at the end of that driveway on the right side of the Coveys' house. ECF Nos. 108-3 at 3-4, 108-4 at 3, 111-2 at 6-12. They also agree that the officers walked directly from their vehicle to the Coveys' back patio and were met by Christopher Covey. ECF Nos. 108-3 at 3-4, 108-4 at 3, 111-2 at 6-12. The officers then observed marijuana on Covey's workbench, handcuffed him, and confirmed the presence of marijuana on the workbench, in a dehydrator, in an opaque plastic container, and in an open plastic container. ECF No. 108-3 at 5-6, 108-4 at 3-4. The only factual dispute is whether the officers saw Christopher Covey on the patio as they came up the driveway, which would give the officers license to directly approach him in the backyard under the knock-and-talk exception.

The defendants provided affidavits from Corporal Espejo and Agent Manchas describing how they approached the Coveys' house via the property's long, curved driveway. ECF Nos. 108-3 at 3-4, 108-4 at 3. Aerial photos of the property show how the driveway approaches the Coveys' house from behind and curves to the right side of the house. ECF No. 111-2 at 23-28. The officers' affidavits state that they saw Christopher Covey on his back patio as they came up the driveway. ECF No. 108-3 at 3-4, 108-4 at 3. The defendants argue that the photos show that the officers could

have seen Covey on the back patio as they approached, and that there were no obstacles to their line of sight. Because the officers saw Covey on the back patio as they approached, the defendants argue that they were permitted to go directly to the patio to speak with him under the knock-and-talk exception.

The Coveys assert that the officers could not possibly have seen him on the patio as they approached. The Coveys provided a photograph taken from the end of the driveway next to the side of the house with a yellow garbage can blocking the view to the patio. ECF No. 107-2 at 2. Christopher Covey testified in his deposition that he must have been inside the house when the officers were coming up the drive way because he would have heard their vehicle on the gravel road. ECF No. 111-2 at 6-12.

First, the picture of the garbage can does not rebut the defendants' evidence that Corporal Espejo and Agent Manchas saw Christopher Covey on his back patio as they were coming up the driveway. The picture shows only what the officers <u>might</u> have seen once they had parked at the end of the driveway on the right side of the house.

Second, Christopher Covey's deposition testimony provides that he had been walking in and out of the house to the back patio around the time the officers arrived, spending no more than a couple of minutes at a time inside or outside. ECF No. 111-2 at 7-12. Christopher Covey stated that the officers could not have

seen him as they approached because he did not hear their vehicle approaching and, thus, must have been inside the house at the time. ECF No. 111-2 at 7-12. However, he was merely speculating as to whether he was inside at the precise moment (or likely moments) that the officers could have seen him as they came up the driveway. This suggestion cannot create a genuine issue of material fact as to whether the officers saw Christopher Covey on their approach. See Othentec, 526 F.3d at 140 ("The nonmoving party cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another.").

This Court finds that no reasonable jury could find that the Corporal Espejo and Agent Manchas did not see Christopher Covey on his patio as they came up the driveway, and the officers' search therefore was within the knock-and-talk exception to the warrant requirement. Thus, the Coveys failed to provide sufficient evidence to show that the officers violated their Fourth Amendment rights, and Corporal Espejo and Agent Manchas's motions for summary judgment must be granted.

## III.  Conclusion

For the foregoing reasons, the plaintiffs' motion for default (ECF No. 114) and motion for summary judgment (ECF Nos. 107, 115) are DENIED. The defendants' motions for summary judgment (ECF Nos. 108, 110, 112) are GRANTED, and the defendants' motions in limine (ECF Nos. 122, 123, 124, 125, 126, 127, 128, 129, 130, 131, 132,

133, 134, 135, 136) and motions for joinder of the motions in limine (ECF Nos. 137, 138) are DENIED AS MOOT. It is further ORDERED that the pretrial conference and the trial scheduled for this civil action be VACATED, and that this civil action be STRICKEN from the active docket of this Court.

Should the parties choose to appeal the judgment of this Court to the United States Court of Appeals for the Fourth Circuit, they are ADVISED that they must file a notice of appeal with the Clerk of this Court in accordance with Federal Rule of Appellate Procedure 4.

IT IS SO ORDERED.

The Clerk is DIRECTED to transmit a copy of this memorandum opinion and order to the <u>pro se</u> plaintiffs by email and certified mail and to counsel of record herein. Pursuant to Federal Rule of Civil Procedure 58, the Clerk is directed to enter judgment on this matter.

DATED: January 22, 2016

/s/ Frederick P. Stamp, Jr.
FREDERICK P. STAMP, JR.
UNITED STATES DISTRICT JUDGE